[Cite as *State v. Confere*, 2023-Ohio-3233.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 30560 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DANA CONFERE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 2020-02-0350 |

DECISION AND JOURNAL ENTRY

Dated: September 13, 2023

SUTTON, Presiding Judge.

{¶1}   Defendant-Appellant, Dana Confere, appeals the judgment of the Summit County Court of Common Pleas.  For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2}   Mr. Confere assaulted R.A., his 36-week pregnant live-in girlfriend, and R.A.'s unborn child.  R.A. barely survived the assault and her child died.  The Summit County Medical Examiner determined the child died when R.A.'s placenta abrupted and separated from her uterine wall as a result of the assault.  During a forensic examination by Jane Bryan, a SANE nurse, R.A. described her relationship with Mr. Confere, and details of the attack, as follows:

> It started off as a rough day for [Mr. Confere] because he didn't have any cigarettes and he was saying things like he felt like I didn't put anything forth with the relationship.  [Mr. Confere] thought I was lazy because he said that I didn't do enough around the house.  But to be specific [Mr. Confere] was screaming at me because he wanted me to put the pizza in the stove for both of us.  I said, "Sorry I wasn't trying to put it off on you."  But he wasn't listening, he didn't care what I

had to say.  That's when he started attacking the tables with a bar.  It was a black bar with a sharp end on it.  I got really scared because this was one of the [worst] freak outs that I've seen.  [Mr. Confere] started threatening me saying, "I'm actually going to really beat you.  If you can't help me then you're going to pay for it."  When he experiences these episodes he'll tell me to leave the room but then when I go to walk into the other room he gets me to where I can't walk away.  He grabs me by my hair.  He definitely knows how to make it to where I don't leave the room.  Over the course of our relationship there were times when he hurt me so bad that I thought my life would never be good again.  I felt hopeless, I wanted it to stop.  I wanted him to get help.  I've told him before that I want him to get help for his explosive intermittent disorder and that I did some research and learned that people with this disorder can get better after two months of group counseling but he said, "I'm not going to change for anybody.  You have to accept the way I am."  When he was attacking the tables with the bar he was breaking the glass and flipping them over.  Here's the weird thing, I don't remember getting off the floor.  He kept saying, "Get up, [R.A.].  Get up, [R.A.].  I'm really worried and I don't know what to do."  Then he called his work buddy, [T.J.] and said, "Please come here, I need your help."  I was paralyzed on the ground but I could [hear] him saying, "She's not getting up [.]  I'm worried about my daughter.  I'm worried about [R.A.]."  I remember lying on the floor and not being able to open my eyes.  * * *  When this all started and he began his freak out, I tried to leave at first but he yanked me by my hair and back into the room and said, "You're not going anywhere."  He continued to verbally assault me.  He ripped me all over the house by my hair.  Some of the time and intervals are hazy a little bit.  I remember him hitting me after he broke the tables.  He hit me on the right side of my face.  Right before I fell on the floor paralyzed is when he kicked me in the stomach.  I never fell down the stairs.  I lied to protect him.  I was so startled when he kicked me in the stomach and I remember making a noise and that's all I remember about that.  He stood in front of me and kicked me in the stomach. I fell to the ground paralyzed and I couldn't move.  * * * Once he kicked me and saw me fall, he quit.  Before I fell I was standing at the front door and he put his hands around my neck and strangled me.

R.A. indicated her entire body was in "excruciating pain," and that her abdominal pain was 10/10 at the time of the assault. R.A. further indicated, "[a]fter [Mr. Confere] kicked me in the stomach I knew something was terribly wrong because I had pain in my vagina." R.A. feared Mr. Confere upon discharge from the hospital and stated, "[i]f he's in jail then I'm not afraid.[1]"

---

[1] R.A. later attempted to recant her statement that Mr. Confere kicked her in the stomach and spoke in his favor at sentencing.

**{¶3}** Mr. Confere was indicted on two counts of felonious assault, in violation of R.C. 2903.11(A)(1)/(D)(1)(a), felonies of the second degree; one count of involuntary manslaughter, in violation of R.C. 2903.04(A)/(C), a felony of the first degree; one count of domestic violence, in violation of R.C. 2919.25(A)/(D)(3), a felony of the fourth degree; one count of domestic violence, in violation of R.C. 2919.25(A)/(D)(5), a felony of the fifth degree; one count of violating a protection order, in violation of R.C. 2919.27(A)(1)/(B)(2); and one count of murder, in violation of R.C. 2903.02(A)/(D) and R.C. 2929.02(B), an unclassified felony.

**{¶4}** Ultimately, Mr. Confere pleaded guilty to two counts of felonious assault, and the remaining charges were dismissed. The trial court sentenced Mr. Confere to consecutive sentences with an indefinite term of a minimum of 14 years and a maximum of 18 years.

**{¶5}** Mr. Confere now appeals raising one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IMPOSING SENTENCE ON [MR. CONFERE].**

**{¶6}** In his sole assignment of error, Mr. Confere argues the trial court erred in "not sentencing him to a minimum term for the felonious assaults and by ordering the sentences to be run consecutively." We disagree.

**{¶7}** The Supreme Court of Ohio has held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; R.C. 2953.08(G)(2). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind

of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶8} A sentencing court has "full discretion to impose a prison sentence within the statutory range" and is not "required to make findings or give their reasons for imposing * * * more than the minimum sentence[ ]." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. "[N]evertheless, * * *, the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38. "Unless the record shows that [a] court failed to consider the factors, or that the sentence is 'strikingly inconsistent' with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range." *State v. Fernandez*, 9th Dist. Medina No. 13CA0054-M, 2014-Ohio-3651, ¶ 8, quoting *State v. Boysel*, 2d Dist. Clark No. 2013-CA-78, 2014-Ohio-1272, ¶ 13.

{¶9} In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37, the Supreme Court of Ohio explained:

> In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings. Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry.

Further, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *State v. Bennett*, 9th Dist. Summit Nos. 28842, 28843, 2018-Ohio-3935, ¶ 10, quoting *State v. Blackert*, 9th Dist. Summit Nos. 27314, 27315, 2015-Ohio-2248, ¶ 10.

**{¶10}** R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶11}** Here, the trial court sentenced Mr. Confere on Count 1, felonious assault, to an indefinite term of a minimum of not less than 6 years and a maximum of not more than 9 years. Additionally, the trial court sentenced Mr. Confere on Count 2, felonious assault, to an indefinite term of a minimum of not less than 8 years and a maximum of not more than 12 years. The trial court further ordered these sentences to be served consecutively for an indefinite term of a minimum of 14 years and a maximum of 18 years.

**{¶12}** In its journal entry, the trial court stated, "[t]he [c]ourt has considered the record, statements of counsel, as well as the principles and purposes of sentencing under [R.C.] 2929.11, and the seriousness and recidivism factors under [R.C.] 2929.12." As to consecutive sentences, the trial court stated:

The court further finds, pursuant to [R.C.] 2929.14(C)(4), that consecutive sentences are necessary to protect the public OR to punish the offender; that consecutive sentences are not disproportionate to the seriousness of the offender's

conduct; to the danger the offender poses to the public, and the court further finds the following:

At least two of the multiple offenses were committed as part of one or more courses of conduct, AND the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(Emphasis in original.)

{¶13} At the sentencing hearing, R.A.'s father and Mr. Confere's mother testified on behalf of the State. R.A.'s father and Mr. Confere's mother asked for maximum imprisonment of Mr. Confere due to the seriousness of the crimes and the belief he would hurt other people. R.A.'s father explained, "[i]f [Mr. Confere] had the nerve to kill his own unborn daughter, he's going to commit another crime. It's as simple as this." Further, R.A.'s father stated, "[Mr. Confere] put [R.A.] in the ICU for a whole week. [R.A.] was lucky to be alive at Akron General." The State provided the trial court with photographs of R.A. taken at the hospital showing significant bruising over most of her body, and images of R.A. intubated in a coma. As to the photographs, the prosecutor explained:

[R.A.] has injuries to her face. She has blood in her eye. She has marks behind her ears. She has scratches and strangulation marks about her neck. She has deep bruises, deep abrasions on her shoulder. She has bruises on her abdomen. She has bruises on both legs. She in essence is covered in injury and covered in bruises, and in my career that's about the most extensive photographs that I've ever been given in regard[] to an individual who wasn't deceased.

The State also provided the trial court with R.A.'s medical records and indicated the doctor treating R.A. for the placental abruption stated, "in her 30 years [of practice] she had only seen three prior cases that involved such an intense degree of damage." A second doctor indicated he "fully expected [R.A.] to die that day[.]" The State acknowledged had R.A. agreed to testify truthfully in accordance with the medical evidence, Mr. Confere would not have received a plea deal for two

counts of felonious assault, but would have instead faced the charge of murder. Further, the State argued:

* * *

> And so we're here at the sentencing phase, two counts of felonious assault. Serious physical harm, as serious as it gets, the death of a baby from [Mr. Confere's] violent assault. Serious physical harm to [R.A.]. As violent and as serious as it gets.

* * *

> And I agree with the sentiments presented by [Mr. Confere's] mother, by [R.A.'s father], and ask this [c]ourt to impose the maximum sentence on Mr. Confere.

{¶14} After allowing R.A., Mr. Confere, and Mr. Confere's attorneys to speak on Mr. Confere's behalf, the trial court stated:

> [B]ased on your prior history, which I agree has no felonies * * * the assault charges, you violated that probation, you have other minor misdemeanor offenses that don't influence the [c]ourt, but that was in 2009, and then you had a domestic violence, two counts in 2015, and you had an assault in 2015, you know, these are not nonviolent offenses. These are offenses of violence. And so the [c]ourt is concerned that you will not be able to properly behave or comply with probation. I don't think probation is the proper sentence in this case.

> In addition, I placed a no contact order on for you to not have any contact whatsoever with [R.A.], and I realize that was over her objection, but I do that often even over the victim's objection because I want there to be a cooling off period, and I want to make sure there's no attempts at influence, and you violated that hundreds and hundreds of times.

* * *

> Taking everything into account in light of [R.A.]'s desire for leniency, I might have been inclined to go easier on you if it weren't for the severity of the injuries in this case.

> I want to make sure [R.A.] understands she's not at fault here.

* * *

> This is the man that beat you when you were 36 weeks pregnant. You understand you could have gone into the hospital the day before this happened and they could have delivered a perfectly beautiful, healthy daughter?

* * *

I do find that in this case consecutive sentences are necessary to protect the public from future crime and to punish you for this offense, and that they are not disproportionate to the seriousness of your conduct and the danger that you pose to others; and that these offenses were committed as part of a course of conduct and the harm caused by those multiple offenses of felonious assault against, not only [R.A.], but her baby, was so great and so unusual that no single prison term adequately reflects the seriousness of your conduct; and the fact that you do have a history of prior conduct, albeit misdemeanors, there are multiple.

And you also, in the two plus years you've been at the jail, you might not have started all those fights, but you did have a lot of disciplinary issues while you were in there and the [c]ourt takes that into account as well.

* * *

{¶15} The record in this matter indicates the trial court considered all relevant principles and purposes of sentencing, as well as the seriousness and recidivism factors. Further, the trial court made the requisite findings for consecutive sentences and the record contains more than ample evidence supporting the trial court's findings in this regard. Lastly, it is undisputed that Mr. Confere's sentence falls within the statutory range for felonious assault, a second degree felony, and his sentence is not contrary to law.

{¶16} Accordingly, Mr. Confere's sole assignment of error is overruled.

III.

{¶17} For the foregoing reasons, Mr. Confere's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

BETTY SUTTON
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.